UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. Judith Robinson, STATE OF INDIANA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 1:13-cv-02009-TWP-MJD |
| INDIANA UNIVERSITY HEALTH INC. formerly known as CLARIAN HEALTH PARTNERS, INC., HEALTHNET, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| JUDITH  ROBINSON bringing this action on behalf of the United States of America and the State of Indiana, | ) ) ) ) | |
| Relator. | ) ) | |

**ORDER ON DEFENDANTS' MOTION TO STRIKE
RELATOR'S PROPOSED ERRATA CHANGES**

This matter comes before the Court on Defendants' Motion to Strike Relator's Proposed

Errata Changes.  [Dkt. 206.]  Defendants seek to strike eight changes from Relator's errata sheet,

submitted after a portion of Relator's deposition was taken on April 4, 2016.  Relator's

deposition remains open, and the parties plan to meet once more to conclude it.

In support of their Motion, Defendants argue that Relator made substantive changes to

her deposition testimony on her errata sheet and argue that such changes are impermissible under

*Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383 (7th Cir. 2000), and must be stricken.  In

response, Relator argues that the challenged errata changes are not material and that, particularly

1

because the deposition remains open, the Defendants may appropriately examine Relator on the changes when the deposition resumes.  According to Relator, *Thorn* does not grant the Court authority to "strike" an errata change outside of the context of a motion for summary judgment.  In reply, Defendants argue that the procedural posture of their Motion is irrelevant to whether the changes should be stricken, respond to the argument that the changes were not material, and ask in the alternative for additional time to depose Relator if their Motion is denied.

The threshold issue before the Court addresses the materiality or substantive character of Relator's errata sheet changes is whether *Thorn* empowers the Court to "strike" such changes under the present procedural posture of this case.  Relator submitted her errata sheet pursuant to Federal Rule of Civil Procedure 30(e)(1), which provides that a "deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."  Any changes must be appended by the designated officer to the back of the transcript.  *Id.* 30(e)(2) ("The officer . . . must attach any changes the deponent makes during the 30-day period.").

In *Thorn v. Sundstrand Aerospace Corp.*, Judge Posner writing for the Seventh Circuit explained that errata changes under Rule 30(e)(1) may sometimes be disregarded, reasoning by analogy to what is frequently referred to as the "sham affidavit doctrine."  207 F.3d at 389.  In *Thorn*, the plaintiff complained of age discrimination when his employment was terminated as part of a reduction in force.  The defendant submitted an errata sheet for a deposition correcting what plaintiff considered to be evidence of age discrimination:

> When Linton was asked at his deposition what criteria his superiors had told him
> to employ in making selections for the RIF, he answered that he was to decide
> "which people did we feel have the longest-term potential for those whose
> product lines we were eliminating." Later—after Curran had pointed to the

> quoted passage as being evidence of age discrimination (because of the reference to "longest-term potential," which Curran treats as a synonym for "youngest")—Linton submitted an errata sheet in which he sought to change the quoted words to "which people were associated with the products that had the longest term potential versus those whose product lines we were eliminating." Thus the words "did we feel have the longest-term potential for" were to be replaced by "were associated with the products that had the longest–term potential versus."

*Id.* at 388.  The trial judge determined that the court could consider the correction, but that summary judgment for defendant was required regardless of the errata change.

Though consideration of the errata sheet would play no role in the outcome of the appeal (the court would have affirmed summary judgment regardless of the errata change), Judge Posner held that, under the circumstances, the trial judge should have disregarded the defendant's post-deposition correction:

> What [the defendant's representative] tried to do, whether or not honestly, was to change his deposition from what he said to what he meant. Though this strikes us as a questionable basis for altering a deposition, it is permitted by Fed.R.Civ.P. 30(e), which authorizes "changes in form *or substance*" (emphasis added); though fortunately the rule requires that the original transcript be retained (this is implicit in the provision of the rule that any changes made by the deponent are to be appended to the transcript) so that the trier of fact can evaluate the honesty of the alteration. We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a "not."

*Id.* at 389 (citations omitted).  The court cited to five cases as examples of cases holding "that a subsequent affidavit may not be used to contradict the witness's deposition;" each of the five cases affirmed the invocation of this rule along with their accompanying grants of summary judgment.  *Id.* (citing *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir. 1999); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168–69 (7th Cir. 1996); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67–68 (7th Cir. 1995); *Schiernbeck v. Davis*, 143

F.3d 434, 437–38 (8th Cir. 1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997)).  The

only other Seventh Circuit case to cite *Thorn* for its holding on disregarding errata sheets is *Truly*

*v. Sheahan*, 135 Fed. App'x 869, 871 (7th Cir. 2005).  *Truly* was an unpublished decision citing

*Thorn* for the proposition that "a litigant may not rewrite deposition testimony to manufacture

issues of fact and defeat summary judgment where the correction cannot be plausibly interpreted

as a correction to the transcript."  *Id.*

Respectfully declining to follow the district court opinions that have suggested or held to

the contrary,[1] the Court finds that the plain text of Rule 30(e)(1)(B) coupled with the language

actually used by Judge Posner compels the conclusion that *Thorn* does not empower the Court to

provide the remedy Defendants seek.  Instead, *Thorn* permits a trial judge to disregard

---

[1] The Court notes that in many of the district court cases cited by Defendants, the courts appear to use the word "strike" as a convenient shorthand for "disregard," *see, e.g.*, *Paul Harris Stores, Inc. v. PricewaterhouseCoopers*, LLP, No. 1:02-CV-1014-LJM-VSS, 2006 WL 2644935, at *1 (S.D. Ind. Sept. 14, 2006) (striking evidence "on summary judgment"), or simply do not use the term at all, *see, e.g.*, *Long v. Kinkade*, No. 1:13-CV-01619-JMS-DKL, 2015 WL 5032353, at *14 (S.D. Ind. Aug. 25, 2015).  This interpretation of "strike" is in line with how the Seventh Circuit has applied the sham affidavit doctrine, *see* discussion, *infra*; *see, e.g.*, *Castro v. DeVry University, Inc.*, 786 F.3d 559, 572 (7th Cir. 2015) (explaining the situations in which a court may "[d]isregard[]" an affidavit on summary judgment); *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169 (7th Cir. 1996) (using same language), and demonstrates that courts applying *Thorn* should explain what evidence warrants consideration on summary judgment, rather than actually striking an offending affidavit or errata sheet from the record.

Defendants cite to a few cases in which courts have stricken errata changes outside of the summary judgment context.  *Nationwide Agribusiness Ins. Co. v. Meller Poultry Equip., Inc.*, No. 12-C-1227, 2016 WL 2593935, at *4–5 (E.D. Wis. May 5, 2016) (addressing motion in limine); *Ali v. The Final Call, Inc.*, No. 13 C 6883, 2015 WL 3856076, at *2–4 (N.D. Ill. June 19, 2015) (striking evidence in case "proceed[ing] to trial"); *Murray v. Conseco, Inc.*, No. 103-CV-1701-LJM-JMS, 2009 WL 1884372, at *8 (S.D. Ind. June 25, 2009) (entertaining an independent motion to strike).  It is difficult to reconcile these cases with the case law applying the sham affidavit doctrine or with Judge Posner's clear recognition that both the original testimony and errata changes should remain on the record "so that the trier of fact can evaluate the honesty of the alteration," *Thorn*, 207 F.3d at 389, recognizing that the same cannot be done on summary judgment, where the court is forbidden from making credibility determinations.  *See* discussion, *infra*.  Nevertheless, the decision to submit errata changes to the jury or to strike them in limine is committed to the sound discretion of the trial judge as gatekeeper for the jury.  *See* Fed. R. Evid. 403.  That, too, is not the procedural posture presently before the Court.

substantive errata changes on summary judgment where the changes do not reflect errors in transcription.  Rule 30(e)(1)(B) allows for "changes in form **or substance**," Fed. R. Civ. P. 30(e)(1)(B) (emphasis added), a proposition that *Thorn* did not disturb.  In fact, the court noted that changing a deposition "from what [one] said to what [one] meant" "**is permitted**" by Rule 30(e), "questionable" though such a change may be.  *Thorn*, F.3d at 388 (emphasis added).  What is impermissible is for a party to attempt to rely upon such bald changes to defeat summary judgment.  This conclusion is supported by *Thorn*'s procedural posture as an affirmance of summary judgment; its reliance upon cases all situated in the summary judgment context; the Seventh Circuit's lone subsequent citation to *Thorn* in *Truly* as providing that "a litigant may not rewrite deposition testimony to . . . **defeat summary judgment**," 135 Fed. App'x at 871; and the court's professed reasoning "by analogy" to the so-called sham affidavit doctrine.

The background of the sham affidavit doctrine lends further support to this tailored reading of *Thorn*.  The emergence of the doctrine may be traced to the Second Circuit's decision in *Perma Research & Development Co. v. Singer Co*, 410 F.2d 572 (2d Cir. 1969).  *See Bank of Illinois*, 75 F.3d at 1170 ("In *Miller v. A.H. Robins Co.*, 766 F.2d 1102 (7th Cir. 1985), Judge Harlington Wood, Jr., relying upon *Perma Research & Development Co.*, noted that a party ought not be able to thwart a summary judgment by 'creating issues of fact through affidavits that contradict their own depositions.'" (citation omitted)); Collin J. Cox, *Reconsidering the Sham Affidavit Doctrine*, 50 Duke L.J. 261, 267 (2000) ("Much of the lore surrounding the sham affidavit doctrine originated with the Second Circuit's decision in *Perma Research & Development Co. v. Singer Co*.").  There, the court recognized that permitting an affidavit to create a genuine issue of material fact on summary judgment over an otherwise-unequivocal deposition would be unfair to the other party whose opportunity to cross-examine had passed.

*See Perma Research*, 410 F.3d at 578 ("The deposition of a witness will usually be more reliable than his affidavit, since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination." (internal quotation omitted)).  That is, a "party **who resists summary judgment**" may not be permitted to "hold back his evidence until the time of trial."  *Id.* (emphasis added).

The Seventh Circuit has also emphasized that the sham affidavit doctrine is uniquely tailored to the needs of the summary judgment procedure, where the ruling judge is not permitted to assess the movant's credibility.  The court noted in *Adelman-Tremblay v. Jewel Companies, Inc.* that "the purpose of summary judgment motions—to weed out unfounded claims, specious denials, and sham defenses—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony."  859 F.2d 517, 521 (7th Cir. 1988).  The sham affidavit doctrine, therefore, reflects the judgment that affidavits cut from whole cloth and offered solely to create issues of fact "are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy."  *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002).  Without the doctrine, even an affidavit "involv[ing] contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment" would in fact preclude summary judgment, *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015), because the court otherwise could not grant summary judgment without intruding upon "the jury's role in resolving questions of credibility," *Bank of Illinois*, 75 F.3d at 1169.

*Thorn* must thus be read in accordance with Judge Posner's own explanation that he was reasoning by analogy to cases like *Bank of Illinois* and later cases like *Castro* (which in turn

relies upon *Bank of Illinois*) and *Beckel*—and the reasoning supports the same.  In nearly every other procedural posture, the Court-as-factfinder is free to evaluate the credibility of, and assign weight to, all offered evidence.  *See, e.g.*, Fed. R. Civ. P. 37(e)(2) (explaining the sanctions that the court may impose upon "finding that the party acted with the intent to deprive another party" of electronically stored information).  The sham affidavit doctrine and the *Thorn* extension were therefore developed to ensure that summary judgment procedure could not be undermined by clever counsel taking advantage of the extremely exacting requirement that there be "**no genuine dispute** as to any material fact."  Fed. R. Civ. P. 56 (emphasis added); *Bank of Illinois*, 75 F.3d at 1169 ("If such contradictions were permitted . . . the very purpose of the summary judgment motion . . . would be severely undercut." (internal quotation omitted)).  At every other stage of proceedings, counsel is free to argue that a contradictory affidavit or errata change warrants little or no weight—and the court or jury is free to agree or disagree.

    The Seventh Circuit's recent decision in *Castro*, in which the court emphasized the limitations of the sham affidavit doctrine, provides further support for limiting *Thorn* to its context.  Writing for the court, Judge Hamilton observed that the doctrine

> must be applied with great care, though, because summary judgment is not a tool for deciding questions of credibility. Few honest witnesses testify at any length without at least occasional lapses of memory or needs for correction or clarification. Disregarding as a sham every correction of a memory failure or variation in a witness's testimony requires "far too much from lay witnesses" and would usurp the trier of fact's role in determining which portion of the testimony was most accurate and reliable. That's why we have said an affidavit can be excluded as a sham only where the witness has given "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact."

*Castro*, 786 F.3d at 571–72 (citations omitted).  The care that *Castro* mandates in applying the sham affidavit doctrine dictates that a decision to invoke it should be left until the court is actually asked to decide whether "the only reasonable inference" is that the affidavit or errata

sheet was a "sham," *id.* at 571, and therefore so inadequate as to fail to create a "genuine dispute," Fed. R. Civ. P. 56.

Nationally, the district courts that read Rule 30(e) to allow for the free-wielding authority to strike any errata change containing substantive, non-clerical errors are in the minority. *See, e.g.*, *Reilly v. TXU Corp.*, 230 F.R.D. 486, 489–90 (N.D. Tex. 2005) (collecting cases) ("The broad view [of Rule 30(e) as permitting substantive changes] has been characterized as the traditional or majority view."); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 120 (D. Mass. 2001) (collecting cases); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) ("Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made."); 8A Charles Alan Wright et al., Federal Practice & Procedure § 2118 (3d ed. 2016) (noting that "[s]ome courts will reject efforts to defeat summary judgment" by analogy to the sham affidavit doctrine, under which a court may "disregard . . . affidavits that seek to retract deposition testimony"). As detailed above, *Thorn* neither contemplates nor authorizes such authority, and this Court declines to extend *Thorn* as Defendants request, particularly in light of the plain language of Rule 30(e) and the purpose of the analogous sham affidavit doctrine.

But this does not mean that Defendants are without a remedy in the case at bar. For one, denying their Motion by no means prohibits Defendants from arguing that *Thorn* precludes consideration of Relator's errata changes on summary judgment under the sham affidavit doctrine. Nor does it preclude Defendants from arguing that Relator's changes warrant little weight on any other motion or at trial, since Rule 30(e) most certainly "requires that the original transcript be retained . . . so that the trier of fact can evaluate the honesty of the alteration." *Thorn*, 207 F.3d at 389.

8

The unusual circumstances of this case demonstrate even more clearly why the relief Defendants seek would be inappropriate: Defendants do not argue that Relator's counsel had the opportunity at the deposition to examine Relator on the issues addressed in the errata sheet and elected to pass it up.  This suggests that instead of preferring to treat the deposition as "a take home examination," *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992), Relator's counsel has simply not yet had the opportunity for cross-examination—an undeniable quirk in this age of depositions spanning not only days, but weeks or even months.  As Defendants point out in a footnote, "[i]f the motion to strike is [granted], Relator's counsel will presumably seek to rehabilitate her at the conclusion of the affirmative deposition," [Dkt. 216 at 7 n.11], following which Defendants would surely re-direct Relator about the elicited testimony.  And if the Court were to deny the motion and allow the changes to stand, Defendants would still need to ask Relator about the changes.  The result is essentially the same, especially since Relator's original answers will remain in the deposition transcript for later factfinders to evaluate, regardless of how the Court rules.  Both parties will have been required to expend time and resources deposing Relator about the issues in her errata sheet, though at least now Defendants are aware of how Relator believes she may have previously testified in error, as opposed to having to wait until Relator's counsel brought up the subject when the deposition resumes.

This particular deposition was already authorized for two days and a total of fourteen hours, [*see* Dkt. 152], with more deposition time already scheduled; the Court **GRANTS** Defendants two additional hours to depose Relator over the particulars of her errata sheet; the Court further **GRANTS** Relator whatever time might be necessary to cross-examine Relator on these issues, which time will not count against the total remaining time in Relator's deposition.

The Court further **ENLARGES** the deadline under Federal Rule of Civil Procedure 30(e)(1) for

the parties to provide any supplemental or corrected errata sheets for the **entirety** of Relator's

deposition (including revision of the errata changes presently at issue) until thirty days after the

parties are notified that the transcript from the final sitting (at which the deposition is actually

concluded) is available for review.  This way, any and all errata changes may be made and

evaluated in the context of the entire deposition.[2]  Defendants' Motion, [Dkt. 206], is otherwise

**DENIED.**

SO ORDERED.

Dated:  02 SEP 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[2] For example, the following exchange occurred at Relator's deposition: "Q: And when was that?  Was that in, like, the summer of '13?  After you were—  A: I want to say it was probably in **2014** I was asked to put together a document with a chronology."  [Dkt. 206-2 at 5 (emphasis added).]  Relator corrected the bolded language on her errata sheet to "2013," citing "Wrong date" as the reason for the change.  [*Id.* at 13.]  Following the completion of Defendants' direct examination at the continued deposition, counsel for Relator will likely cross-examine the Relator in an effort to correct her prior testimony and explain the reason therefor, following which Relator will presumably make the same errata change, but instead of providing the explanation of "Wrong date," will presumably cite to the page and lines of her deposition wherein the reason for the correction is explained.